# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Catherine M. Dusman | : | |
| | : | |
| v. | : | No. 924 C.D. 2014 |
| | : | No. 974 C.D. 2014 |
| The Board of Directors of the | : | Argued: June 15, 2015 |
| Chambersburg Area School District and | : | |
| The Chambersburg Area School District, | : | |
| Appellants | : | |

**BEFORE:**  **HONORABLE ROBERT SIMPSON, Judge**
**HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE JAMES GARDNER COLINS, Senior Judge**

**OPINION BY JUDGE BROBSON**                **FILED:  July 31, 2015**

This consolidated matter involves the appeals of the Chambersburg Area School District (District) and the District's Board of Directors (Board) from two orders of the Court of Common Pleas of the 39th Judicial District (Franklin County Branch) (trial court).  The first order, dated May 29, 2014, granted a motion for a preliminary injunction filed by Catherine M. Dusman (Dusman) without notice of hearing (Temporary Injunction Order).  The second order, dated June 2, 2014, followed notice and a hearing and continued the preliminary injunction the trial court entered on May 29, 2014 (Preliminary Injunction Order).  For the reasons set forth below, we reverse.

## I.  BACKGROUND

Aspects of these consolidated appeals involve an employment dispute between the District and Dusman.  After the District terminated Dusman's position as an Assistant Superintendent, Dusman sued the District, seeking an order in mandamus directing the District to restore her to her position.  By Order dated

April 28, 2014, the trial court granted Dusman's motion for peremptory judgment and directed the District to reinstate Dusman to her previous position as Assistant Superintendent. The District appealed,[1] and in *Dusman v. Board of Directors of the Chambersburg Area School District*, 113 A.3d 362 (Pa. Cmwlth. 2015) (*Dusman I*), *petition for allowance of appeal*, (Pa., No. 90 MAL 2015, filed February 4, 2015), we affirmed.

On May 29, 2014, a couple of weeks after the District appealed the trial court's reinstatement order that is the subject of *Dusman I*, Dusman again filed suit against the District. In that action, Dusman averred that the Board violated the Sunshine Act, 65 Pa. C.S. §§ 701-716, when, during an executive (nonpublic) session on May 7, 2014, the Board discussed, deliberated, and decided to appeal the trial court's reinstatement order. Dusman sought declaratory and permanent injunctive relief with respect to those executive session actions.

Dusman also challenged other executive session actions by the Board. Specifically, Dusman averred that the Board violated the Sunshine Act by discussing legal services during an executive session on May 14, 2014. Dusman averred that the Board again violated the Sunshine Act during its May 28, 2014 meeting by discussing and deliberating in an executive session, rather than a public session, the subject of rates to be paid for legal services. Dusman sought an order enjoining the Board from engaging in discussion and deliberation in executive sessions on the subject of legal services and the rates it would pay for legal services and requested an order directing the Board to provide

---

[1] Though interlocutory, the trial court's order granting peremptory judgment in the nature of mandamus was appealable as of right under Pa. R.A.P. 311(a)(5).

her with copies of the audio tapes of those executive sessions for release to the public.

On the same day that she filed her complaint, Dusman filed a motion for preliminary injunctive relief, citing Section 713 of the Sunshine Act, 65 Pa. C.S. § 713, which provides, in relevant part:

> The court may enjoin any challenged action until a judicial determination of the legality of the meeting at which the action was adopted is reached. Should the court determine that the meeting did not meet the requirements of this chapter, it may in its discretion find that any or all official action taken at the meeting shall be invalid.

Specifically, Dusman sought an order preliminarily enjoining the District "from (1) prosecuting its appeal [of the trial court's order granting peremptory judgment in favor of Dusman] and (2) holding executive sessions to deliberate matters regarding legal services or the approval of 2014-2015 rates for legal services" until the trial court resolved her underlying claims involving the Sunshine Act. (Reproduced Record (R.R.) at 22a.) Within hours of the filing of Dusman's Sunshine Act complaint, the trial court issued the Temporary Injunction Order:

> **NOW**, this 29th day of May, 2014, upon consideration of the Motion for Preliminary Injunction in this matter and after considering the Complaint filed in this matter, and pursuant to Pa. R.[C.]P. [No.] 1531(a), Chambersburg Area School District is hereby temporarily enjoined from (1) taking further formal action to prosecute its appeal filed on May 8, 2014 in Franklin County Docket No. 2013-2085 and (2) deliberating matters pertaining to legal services and legal rates for legal services during executive sessions.

The Temporary Injunction Order also scheduled a hearing on the preliminary injunction motion for June 2, 2014.

3

On June 2, 2014, after conducting a hearing on the motion for preliminary injunction, the trial court entered the Preliminary Injunction Order:

> June 2, 2014, the Court having convened a preliminary hearing on the plaintiff's petition for injunctive relief under the provisions of the Sunshine [Act], and the Court upon taking evidence and hearing the oral arguments of counsel hereby orders that the [Temporary Injunction Order] shall remain in effect until the Court has an opportunity to review the written arguments of counsel and determine whether or not the order should be rescinded or continued pending further proceedings in the matter or entered as a final order upon conclusion of the . . . complaint under the . . . Sunshine Act.

> The Court notes that the order does not invalidate the appeal of the school district but prohibits [it] from taking further action or further steps to prosecute the appeal.

On June 11, 2014, the District filed separate notices of appeal with respect to the trial court's Temporary and Preliminary Injunction Orders.[2] On June 16, 2014, the trial court directed the District to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b) within 21 days. The next day, the trial court issued a Memorandum of Decision in support of its Preliminary Injunction Order. The District filed separate concise statements with respect to the Temporary and Preliminary Injunction Orders. The trial court issued an opinion in accordance with Pa. R.A.P. 1925(a) (Rule 1925(a) Opinion), rejecting each of the District's claims of error.

---

[2] The trial court's orders, though interlocutory, were appealable as of right. Pa. R.A.P. 311(a)(4). We consolidated the separate appeals by Order dated August 29, 2014.

4

## II. ISSUES

The District raises several issues on appeal. First, with respect to the Temporary Injunction Order, the District argues that the trial court acted in contravention of Pa. R.C.P. No. 1531(a). Second, with respect to both orders on appeal, the District argues that the trial court erred in failing to make required findings of fact to support the grant of preliminary injunctive relief. In support of its argument on this issue, the District cites *Lee Publications, Inc. v. Dickinson School of Law*, 848 A.2d 178 (Pa. Cmwlth.) (en banc), *appeal denied*, 857 A.2d 675 (Pa. 2004). Under *Lee Publications*, the District contends that before granting preliminary injunctive relief, the trial court was required to find that Dusman had a clear right to relief and was likely to succeed on the merits of her Sunshine Act claims, that she would suffer irreparable harm if the injunction was refused, that greater injury would result from refusing the injunction than granting it, that the injunction would preserve the status quo pending a final decision on the merits, that the injunctive relief is narrowly tailored to abate the alleged harm, and that the public interest would not be adversely affected by the preliminary injunction.

As its third issue on appeal, the District argues that the trial court's injunction orders in Dusman's Sunshine Act lawsuit, precluding the District from taking further action to prosecute its appeal in *Dusman I*, exceeded the trial court's limited authority under Pa. R.A.P. 1701(b) to further affect the outcome of Dusman's reinstatement lawsuit while the District's appeal was pending in this Court. The District's next three issues go to the merits of the trial court's determination that the District violated the Sunshine Act during the executive sessions on May 7, May 14, and May 28, 2014. In its seventh issue, the District questions whether the trial court's injunction orders are overbroad. In its eighth

5

and final issue, the District asks whether the trial court erred by not requiring Dusman to post a bond or legal tender pursuant to Pa. R.C.P. No. 1531(b).[3]

## IV. DISCUSSION

### A. The Temporary Injunction Order

The District's first issue on appeal requires us to consider whether the trial court erred in entering the Temporary Injunction Order without notice or hearing. As noted above, the trial court entered the Temporary Injunction Order the same day that Dusman filed her Sunshine Act complaint (indeed, within hours of the filing). Pa. R.C.P. No. 1531 provides, in relevant part:

> (a) A court shall issue a preliminary or special injunction only after written notice and hearing *unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held*, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.
>
> . . . .
>
> (d) An injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held within five days after the granting of the injunction or within such other

---

[3] After engaging in a preliminary review of the briefs and record, we entered an order on February 25, 2015, directing the parties to file supplemental briefs addressing the following questions: (1) whether, in light of our opinion in *Dusman I*, there remained any need for the Court to address any (or all) of the issues raised in this appeal; and (2) whether the failure of the parties to apprise the Court during our consideration of the appeal in *Dusman I*, and before we issued our opinion in that case, of the orders that are the subject of this appeal (which pertinently relate to the "prosecution" of the *Dusman I* appeal) has any implications for our resolution of these appeals. After having reviewed the briefs the parties submitted, we agree with their suggestion that we should proceed to address the primary issues raised in the appeal.

> time as the parties may agree or as the court upon cause shown shall direct.

(Emphasis added.) The District contends that the trial court erred in issuing the Temporary Injunction Order without any averment by Dusman in her papers that injunctive relief must be entered without notice or hearing to prevent immediate and irreparable injury or such a finding by the trial court. In its Rule 1925(a) Opinion, the trial court claims that it issued the Temporary Injunction Order pursuant to Section 713 of the Sunshine Act, which does not impose the same conditions for injunctive relief without notice or a hearing as Pa. R.C.P. No. 1531. Dusman makes the same argument in her brief.

We, however, reject the trial court's position that it issued the Temporary Injunction Order pursuant to Section 713 of the Sunshine Act. To the contrary, the Temporary Injunction Order expressly provides that the trial court issued the order "pursuant to" Pa. R.C.P. No. 1531(a). We, therefore, will analyze the propriety of the Temporary Injunction Order under that authority. Nowhere in her Motion for Preliminary Injunction or in her Complaint does Dusman allege a basis for the trial court to grant preliminary injunctive relief without affording the District notice or a hearing. The trial court's Temporary Injunction Order is likewise void of any reason for dispensing with the notice and hearing requirement in Pa. R.C.P. No. 1531(a). Accordingly, we agree with the District's contention that the trial court erred in issuing the Temporary Injunction Order without written notice and a hearing. We, therefore, will reverse that order.

### B. The Preliminary Injunction Order

#### 1. Lee Publications

Turning to the next issue on appeal, we consider whether the trial court erred in failing to follow this Court's *en banc* decision in *Lee Publications* when it considered and granted Dusman preliminary injunctive relief. Specifically,

the District complains that under *Lee Publications*, the trial court "must specifically address or discuss that the party seeking the injunction has met the six (6) elements required to obtain the injunction. In this case, the trial court failed to address any of the reasons that Dusman was entitled to an injunction, and instead just granted the injunction." (District Br. at 19.)

Like this case, *Lee Publications* involved an appeal of an order that granted preliminary injunctive relief under the Sunshine Act. The only issue before us in *Lee Publications* was whether one of the named defendants—The Dickinson School of Law Board of Governors ("Board of Governors")—was subject to the Sunshine Act. The common pleas court ruled that it was and entered a preliminary injunction, directing the Board of Governors to comply with the Sunshine Act meeting requirements. *Lee Publications*, 848 A.2d at 180.

This Court held on appeal that the Board of Governors was not an "agency," as defined in the Sunshine Act. *Id.* at 188-89. In light of this legal conclusion, the Court considered whether the trial court erred in granting preliminary injunctive relief:

> A trial court has "reasonable grounds" for granting injunctive relief where it properly finds that the prerequisites for a preliminary injunction have been satisfied. "For a preliminary injunction to issue, *every one* of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others."

*Id.* at 189 (quoting *Cnty. of Allegheny v. Cmwlth.*, 544 A.2d 1305, 1307 (Pa. 1988)) (emphasis in original) (citation omitted). The Court in *Lee Publications* also held that in order to obtain preliminary injunctive relief, the requester must prove that:

> (1)     an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

8

(2)    greater injury would result from refusing an injunction than from granting it, and, the issuance of the injunction will not substantially harm other interested parties;

(3)    an injunction will properly restore the parties to their status as it existed prior to the alleged wrongful conduct;

(4)    the activity the petitioner seeks to restrain is actionable, the right to relief is clear, and success on the merits is likely;

(5)    the injunction is reasonably suited to abate the offending activity; and

(6)    an injunction will not adversely affect the public interest.

*Id.* (quoting *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003)). In light of the Court's conclusion that the Board of Governors was not subject to the Sunshine Act, we held that the plaintiffs failed to establish one of the prerequisites for preliminary injunction relief—that being a likelihood of success on the merits. Accordingly, we reversed. *Id.*

*Lee Publications* was not the first case in which this Court looked to some derivation of the above-quoted factors to determine whether a trial court erred in granting preliminary injunctive relief under the Sunshine Act. In *Patriot-News Company v. Empowerment Team of the Harrisburg School District Members*, 763 A.2d 539 (Pa. Cmwlth. 2000) (en banc), empowerment teams from two school districts appealed preliminary injunction orders from the common pleas court, compelling the teams to hold meetings in compliance with the Sunshine Act. The empowerment teams raised several issues on appeal. Among the issues that this Court considered was whether the trial court had "apparently reasonable grounds" to grant preliminary injunctive relief. *Patriot-News*, 763 A.2d at 546. Applying this standard of review, the Court opined:

9

The law is well settled that a court is able to grant a preliminary injunction only where the movants establish all of the elements required to satisfy their burden of proof. As we explained many years ago . . . :

> Three criteria have been established for the granting of a preliminary injunction, which, as a harsh and extraordinary remedy, is to be granted only when and if each criteria has been fully and completely established. . . . They are: (1) the preliminary injunction must be necessary to prevent immediate and irreparable harm which could not be compensated for by damages; (2) greater injury would result from the denial of the preliminary injunction than from the granting of it; and (3) it would operate to restore the parties to the status quo as it existed prior to the alleged wrongful conduct. In addition to meeting all three criteria, the court must be convinced that plaintiffs' right to a preliminary injunction is clear . . . and general equity jurisdiction must be warranted.

> Of course, the movants do not have to prove an absolute right to relief in order to obtain a preliminary injunction; instead, if the other elements necessary for a preliminary injunction exist, and substantial legal questions are raised by the underlying legal claim, their "right to relief is clear."

*Id.* at 546-47 (quoting *Comm. of Seventy v. Albert*, 381 A.2d 188, 190 (Pa. Cmwlth. 1977)) (citations omitted). Upon review of the record and the parties' arguments, this Court, analyzing the above factors, concluded that the newspapers who sought the preliminary injunctive relief met their burden of proof. *Id.* at 547.

On this issue, the District's claim of error is that the trial court did not *specifically* address or discuss the above-quoted elements for preliminary injunctive relief. We disagree. Although both the District and the trial court contend that these pre-requisites do not apply where preliminary injunctive relief is

10

sought under Section 713 of the Sunshine Act, the trial court, in its Memorandum Decision, expressly stated that it reviewed and considered each of these pre-requisites for preliminary injunctive relief:  "In reviewing the evidence presented at the hearing, the Court specifically determined that the plaintiff met all the elements of proof necessary pursuant to Section 1531 to acquire Preliminary Injunctive Relief including irreparable and immediate harm.  Clearly, Section 713 of the Sunshine Act would support the Court's Order of Preliminary Injunctive Relief without the necessity of proving the elements required by Rule 1531." (Mem. Decision at 5.)[4]  Accordingly, although the trial court did not reference *Lee Publications* in its Memorandum Decision, the record shows that the trial court specifically considered the factors that this Court discussed in *Lee Publications* and found, based on the record, that Dusman met her burden of proving entitlement to preliminary injunctive relief.

### 2. *Preliminary Injunction on Prosecution of Reinstatement Appeal*

We next consider whether the trial court exceeded its authority by preliminarily enjoining the District from prosecuting its pending appeal before the Court in *Dusman I*.  The District relies on Pa. R.A.P. 1701(a), which provides, *inter alia*, that "after an appeal is taken . . . the trial court or other government unit may no longer proceed further in the matter."  The District contends that by preliminarily enjoining the District from prosecuting its appeal from the trial court's reinstatement order in *Dusman I*, the trial court violated this rule. In response, Dusman contends that this rule only barred the trial court from taking

---

[4] We interpret the trial court's reference to "Section 1531" as referring to Pa. R.C.P. No. 1531.  We further interpret the phrase "elements of proof," particularly in light of the trial court's reference to "irreparable and immediate harm," as referring to the so-called pre-requisites to preliminary injunctive relief.

action in the reinstatement lawsuit. Because the Sunshine Act matter is a separate proceeding, or a separate "matter," the rule does not apply. The trial court takes the same position in its Rule 1925(a) Opinion.

Dusman is essentially taking the position that although the trial court could not bar the District directly from pursuing its appeal by issuing an order to that effect in the reinstatement action, it could do so indirectly by issuing an order in the separate, but related, Sunshine Act lawsuit. We disagree. The matter on appeal to this Court in *Dusman I* was the trial court's order granting peremptory mandamus. By issuing an order in the Sunshine Act lawsuit that barred the District from "prosecuting" its appeal from that order, the trial court affected that matter. The trial court lacked any jurisdiction, under the Rules of Appellate Procedure or the Sunshine Act, to influence this Court's docket and to control whether and to what extent an appellant may "prosecute" an appeal before this Court. We, therefore, reverse the trial court's order granting preliminary injunctive relief to the extent that it enjoined the District from "prosecuting" its appeal of the peremptory judgment order.[5]

### 3. *Preliminary Injunction Prohibiting Executive Session Deliberations on Legal Services/Rates*

This challenged portion of the trial court's Preliminary Injunction Order stems from the Board's May 14 and 28, 2014 executive sessions. The District maintains that the trial court erred in concluding that Dusman made a

---

[5] Because we conclude that the trial court exceeded its authority in preliminarily enjoining the District from prosecuting its appeal in *Dusman I*, we will not consider in this appeal from the Preliminary Injunction Order the merits of whether the Board violated the Sunshine Act during the May 7, 2014 executive session and the related question of whether the District is required, under the Sunshine Act, to authorize appeals by Board vote at a public meeting.

12

*prima facie* showing that the Board took official action with respect to legal services and rates during these executive sessions in violation of the Sunshine Act. To the contrary, the District argues that the record shows only that the purpose of these executive sessions was to receive information, not to take any formal action. The District also argues that, to the extent the Board discussed the subject of its then-solicitor during these executive sessions, those executive session discussions were authorized under Section 708(a)(1) of the Sunshine Act, 65 Pa. C.S. § 708(a)(1), relating to personnel matters.

As a general rule, the Sunshine Act requires agencies to engage in "deliberations" and to take "official action" in meetings open to the public. 65 Pa. C.S. § 704. Section 703 of the Sunshine Act, 65 Pa. C.S. § 703, defines the term "deliberation" as "[t]he discussion of agency business held for the purpose of making a decision." The term "official action" includes: (1) "[r]ecommendations made by an agency pursuant to statute, ordinance or executive order;" (2) "[t]he establishment of policy by an agency;" (3) "[t]he decisions on agency business made by an agency;" and (4) "[t]he vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order." *Id.* § 703.

An "executive session" is "[a] meeting from which the public is excluded." *Id.* As an exception to the general rule requiring public meetings, the Sunshine Act allows an agency to conduct executive sessions in certain circumstances. *Id.* §§ 707(a), 708. One of those circumstances relates to personnel matters:

> An agency may hold an executive session for one or more of the following reasons:
>
> > (1) To discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or

13

disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting. The agency's decision to discuss such matters in executive session shall not serve to adversely affect the due process rights granted by law, including those granted by Title 2 (relating to administrative law and procedure). The provisions of this paragraph shall not apply to any meeting involving the appointment or selection of any person to fill a vacancy in any elected office.

*Id.* § 708(a)(1). Although Section 708(a) of the Sunshine Act authorizes executive sessions to discuss certain matters, "official action" on those discussions must be taken at an open meeting. *Id.* §708(c).

We turn now to the District's contention that the trial court did not have reasonable grounds to conclude that the Board engaged in "deliberations" during the May 14 and 28, 2014 executive sessions. In support of its contentions that it did not deliberate at those meetings, the District cites the Pennsylvania Supreme Court's decision in *Smith v. Township of Richmond*, 82 A.3d 407 (Pa. 2013). In *Smith*, the Pennsylvania Supreme Court considered the question of whether the term "deliberations" in the Sunshine Act was broad enough to encompass meetings with various parties, including adverse parties in litigation, to obtain information that may be helpful to the agency in deciding whether to settle ongoing litigation. *Smith*, 82 A.3d at 412-13. Based on the definition of "deliberation" in the Sunshine Act, the Supreme Court focused its inquiry on whether the discussions at issue were held "for the purpose of making a decision"

14

on that particular topic. *Id.* at 415. The Supreme Court elaborated on this question:

> Making a decision implies the exercise of judgment to determine which of multiple options is preferred. Thus, a discussion of agency business may be said to have taken place "for the purpose of making a decision"—and therefore, to have comprised "deliberations"—where the discussion consisted of debate or discourse directed toward the exercise of such judgment. This would occur, for example, where agency members weigh the "pros and cons" of the various options involved, or otherwise engage in comparisons of the different choices available to them as an aid in reaching a decision on the topic, even if the decision is ultimately reached at a later point.
>
> Gatherings held solely for the purpose of collecting information or educating agency members about an issue do not fit this description, notwithstanding that the information may later assist the members in taking official action on the issue. To conclude that such information-gathering discussions are held for the purpose of making a decision would amount to a strained interpretation not reflective of legislative intent. In this regard, it bears noting that, although the [Sunshine] Act is designed to enhance the proper functioning of the democratic process by curtailing secrecy in public affairs, the legislative body has expressly cabined the openness directive by reference to a specific discussional purpose ("making a decision"), thereby leaving room for closed-door discussions held for other purposes.

*Id.* at 415-16 (citations omitted). Upon review of the record, the Supreme Court noted that all of the witnesses to the executive sessions described the meetings as fact-finding in nature. Accordingly, the Supreme Court held that the gatherings did not include "deliberations" and thus did not violate the Sunshine Act. *Id.* at 416.

Although the legal standard that the Supreme Court developed in *Smith* is helpful, the appeal in that case was from an order granting summary judgment. Here, by contrast, we are reviewing not a final decision on the merits, but a decision granting preliminary injunctive relief pending a final decision. Generally, we review trial court orders granting preliminary injunctive relief for an abuse of discretion. *Lee Publications*, 848 A.2d at 184. Where we are called upon to consider a trial court's decision to grant preliminary injunctive relief, our review is generally limited to considering whether no grounds exist to support the trial court's decision or whether the rule of law the trial court relied upon was clearly erroneous or misapplied. *Free Speech, LLC. v. City of Philadelphia*, 884 A.2d 966, 970 n.1 (Pa. Cmwlth. 2005). The District contends that the evidence adduced at the hearing below establishes that the executive sessions on May 14 and 28, 2014, were for information gathering only and for discussions regarding that information. It contends, therefore, that, like in *Smith*, there were no deliberations.

In response, Dusman points to a hearing exhibit marked for identification purposes as "Plaintiff's Exhibit 8." The exhibit relates only to the May 28th meeting. The exhibit details a recommendation by school administration to the Board to approve proposed 2014-2015 legal counsel and rates for legal services. According to the testimony of School Superintendent Joseph Padasak, when this agenda item came up at the Board meeting on May 28th, a Board member asked that the Board adjourn to executive session to discuss the matter. The Board solicitor advised that an executive session would be lawful under the circumstances. The Board went into executive session. When they returned to public session, the Board voted against the administration's recommendation regarding legal counsel and rates. (R.R. 185a-86a.) Other than this piece of

16

evidence, Dusman focuses not on the issue of whether "deliberations" actually occurred during the May 14 and 28, 2014 meetings. Instead, as the trial court does in its Rule 1925(a) Opinion, Dusman focuses on the question of whether those executive sessions fell within the personnel exception under Section 708(a)(1) of the Sunshine Act. Indeed, the trial court seems to acknowledge in its Rule 1925(a) Opinion that it is at least uncertain whether "deliberations" actually occurred at those meetings: "We note that whether deliberations took place at the May 14, 2014 and May 28, 2014 executive sessions does not affect the legitimacy of our preliminary injunction Order enjoining future deliberations on the matters." (Rule 1925(a) Opinion.)[6]

Respectfully, we do not agree with the trial court's approach. The trial court's very authority to act here is premised on an alleged violation of the Sunshine Act by the Board when it "deliberated" the subject of outside legal services, including rates, in executive sessions held on May 14 and May 28, 2014. (Compl. ¶¶ 23, 24; R.R. 29a.) The trial court's authority to issue preliminary injunctive relief under Section 713 of the Sunshine Act is confined to enjoining "any *challenged* action until a judicial determination of the legality of the meeting *at which the action was adopted* is reached." (Emphasis added.) Here, the trial court did not enjoin any action taken during the May 14th and May 28th executive sessions. It also did not examine the record to determine whether there was prima facie evidence of any "deliberations" during those executive sessions, such that those meetings should have been public (unless excepted under Section 708(a)(1)

_____

[6] In its Memorandum Decision, the trial court only discusses record evidence on the question of whether the Board violated the Sunshine Act during the May 7, 2014 meeting. (Mem. Decision at 2-3.) Like it does in its Rule 1925(a) Opinion, the trial court focuses on the issue of whether discussions during the May 14 and 28, 2014 executive sessions fell within the personnel matter exception in Section 708(a)(1) of the Sunshine Act. (*Id.* at 4.)

of the Sunshine Act).  We do not read Section 713 of the Sunshine Act as empowering the courts to issue prospective injunctive relief based on a legal argument that an agency may not engage in certain conduct during executive session, but without evidence that the agency defendant has actually engaged in that allegedly unlawful conduct.

Because the trial court did not review the evidence adduced during the preliminary injunction hearing and make a determination on whether there was prima facie evidence to support Dusman's claim that the Board deliberated in executive session "matters pertaining to legal services and legal rates for legal services," the trial court lacked apparently reasonable grounds to enter a preliminary injunction under Section 713 of the Sunshine Act barring the Board from engaging in deliberations on such matters in future executive sessions.[7]  We, therefore, reverse the trial court's order granting preliminary injunctive relief to the extent that it enjoined the District from "deliberating matters pertaining to legal services and legal rates for legal services during executive sessions."

_____
P. KEVIN BROBSON, Judge

_____

[7] Because the trial court did not consider and decide this threshold question, we will not consider the question of whether such deliberations are excepted from the public meeting requirement under Section 708(a)(1) of the Sunshine Act.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catherine M. Dusman             :
                                      :

                v.                :     No. 924 C.D. 2014
                                        :     No. 974 C.D. 2014

The Board of Directors of the      :
Chambersburg Area School District and  :
The Chambersburg Area School District,  :
                  Appellants    :

# **O R D E R**


AND NOW, this 31st day of July, 2015, the May 29, 2014, and June 2, 2014, orders of the Court of Common Pleas of the 39th Judicial District (Franklin County Branch) are REVERSED.


                                 _____
                                   P. KEVIN BROBSON, Judge