IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hollidaysburg Community Watchdog   :
and Richard Latker   :
  :
  :
v.   :
  :
  :
Borough of Hollidaysburg and   :
Jim Gehret, Borough Manager   :
  :    No. 199 C.D. 2024
Appeal of: Richard Latker   :    Submitted: May 6, 2025


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                               FILED: July 16, 2025


Richard Latker[1] (Latker) appeals from the Blair County (County) Common Pleas Court's (trial court) February 6, 2024 order (entered February 13, 2024) sustaining the Borough of Hollidaysburg's (Borough) preliminary objections (POs) and dismissing his amended Petition for Declaratory Judgment and Injunctive Relief (Amended Complaint). Latker presents four issues for this Court's review: (1) whether Borough Council's subsequent action at a publicly noticed meeting cured the Phoenix Volunteer Fire Department (PVFD) Committee's (PVFD Committee) Sunshine Act[2] violations; (2) whether the PVFD Committee is an official government agency and deliberative body distinct from Borough Council; (3) whether the PVFD Committee's establishment constituted a Sunshine Act

---

[1] A second petitioner, Hollidaysburg Community Watchdog (HCW), for which Latker serves as president, withdrew from the litigation.

[2] 65 Pa.C.S. §§ 701-716.

violation; and (4) whether the trial court was obligated to assess Latker's allegations of PVFD Committee members' bad faith, specifically those detailing defiance of the Sunshine Act, and to consider penalties. After review, this Court affirms.

Latker is a Borough resident. On March 2, 2022, Latker filed a complaint against the Borough, the PVFD Committee, Borough Manager James Gehret (Gehret), Borough Councilman Brady Leahy (Councilman Leahy), and Borough Councilman James Mielnik (Councilman Mielnik) (collectively, Appellees) seeking injunctive relief and declaratory judgment (Complaint).[3] Therein, Latker alleged that Appellees committed numerous Sunshine Act violations. Essentially, Latker averred that the PVFD Committee conducted closed-door meetings which resulted in the restoration of PVFD funding following a Borough Council vote at a public meeting on December 9, 2021. On May 31, 2022, Appellees filed the POs to the Complaint, asserting therein that Latker did not properly serve the Complaint, the Complaint lacked sufficient specificity,[4] and the Complaint was legally insufficient.[5] On June 15, 2022, Latker opposed the POs. On August 31, 2022, the trial court held oral argument. On November 16, 2022, the

---

[3] In a separate action under the Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104 (Right-to-Know Action), HCW sought declaratory and injunctive relief alleging that the Borough and Gehret intentionally destroyed records to which HCW was entitled, and disbursed funds to the PVFD in violation of law. Although Councilman Leahy was not a party to that Right-to-Know Action, HCW alleged ethical misconduct against Councilman Leahy. It appears that during the August 31, 2022 oral argument, the trial court consolidated the instant action and the Right-to-Know Action, but the trial court entered no formal order on the docket. By November 22, 2022 order, the trial court dismissed the Right-to-Know Action with leave to amend the complaint, and dismissed HCW's allegation of ethical misconduct of Councilman Leahy with prejudice. Thereafter, HCW filed an amended complaint in the Right-to-Know Action and, on February 6, 2024, the trial court dismissed the Right-to-Know Action based on HCW's lack of standing. HCW's appeal in the Right-to-Know Action is currently before this Court at Docket No. 196 C.D. 2024. To the extent that the trial court dismissed HCW's ethical misconduct allegation with prejudice, such order did not address the alleged Sunshine Act violations against Councilman Leahy.

[4] *See* Pennsylvania Rule of Civil Procedure (Rule) 1028(a)(3), Pa.R.Civ.P. 1028(a)(3).

[5] *See* Rule 1028(a)(4), Pa.R.Civ.P. 1028(a)(4).

trial court stayed discovery pending disposition of the preliminary objections. On November 22, 2022, the trial court afforded Latker 30 days to amend the Complaint, and dismissed Latker's claim against Councilman Leahy with prejudice.[6] The trial court also overruled Appellees' preliminary objections with respect to Appellees' Sunshine Act compliance.

On December 20, 2022, Latker filed the Amended Complaint, alleging therein that Appellees committed numerous Sunshine Act violations. On January 9, 2023, Appellees filed the POs, objecting on the bases that Latker's Amended Complaint was insufficiently specific and legally insufficient. On January 24, 2023, Latker opposed the POs, and the parties filed supporting briefs. By February 6, 2024 order (entered February 13, 2024), the trial court sustained the POs and dismissed the Amended Complaint with prejudice.

The trial court reasoned, in relevant part:

> In this case, [Latker] seeks declaratory and injunctive relief that the Borough violated the Sunshine Act and asks the [trial c]ourt to invalidate the Borough action taken at a duly advertised public meeting where the Borough voted for funding of a volunteer fire department. [Appellees] concede their vote at the Borough meeting on December 9, 2021[,] was at a duly authorized regular meeting of the Borough Council. [Latker] bases [his] argument on the allegation that members of the [Borough] Council had unadvertised meetings with fire officials in violation of the Sunshine Act. [Appellees] deny there were meetings[,] but rather claim[] they were at most conferences.
>
> The difficulty for [Latker] is that, even if [he is] correct that improper negotiations preceded the vote taken at a duly advertised public meeting, that will not give rise to a claim under the Sunshine Act. The Sunshine Act does not authorize [c]ourts to invalidate official action taken at a subsequent public meeting that conforms to the [Sunshine]

---

[6] Given that Councilman Leahy was not a defendant in the instant action, it is unclear what claim the trial court dismissed against him.

Act's requirements, based on an earlier, improper, closed-door meeting. *Smith v. T[wp.] of Richmond*, 82 A.3d[] 407 (Pa. 2013). A reaffirmation vote at a regularly scheduled meeting after public notice cured a Sunshine Act violation, which occurs when action was taken at an earlier meeting without providing required notice.

Given the above, the [trial c]ourt will dismiss the . . . [Amended Complaint] with prejudice, as it appears [] [Latker] cannot succeed on [his] claims.

Trial Ct. Op. at 2-3 (citation omitted). Latker appealed to this Court.[7]

Initially,

[a]s a general rule, the Sunshine Act requires agencies to engage in "deliberations" and to take "official action" in meetings open to the public. [Section 704 of the Sunshine Act,] 65 Pa.C.S. § 704. Section 703 of the Sunshine Act, 65 Pa.C.S. § 703, defines the term "deliberation" as "[t]he discussion of agency business held for the purpose of making a decision." The term "official action" includes: (1) "[r]ecommendations made by an agency pursuant to statute, ordinance or executive order;" (2) "[t]he establishment of policy by an agency;" (3) "[t]he decisions on agency business made by an agency;" and (4) "[t]he vote taken by any agency on any motion, proposal,

---

[7] [This Court's] review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. In reviewing preliminary objections, all well[-]pleaded relevant and material facts are to be considered as true, and preliminary objections shall only be sustained when they are free and clear from doubt. Such review raises a question of law; thus, our standard of review is *de novo* and our scope of review is plenary.

*Gustafson v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 13*, 310 A.3d 1267, 1269 n.3 (Pa. Cmwlth. 2024), *appeal granted*, Pa. No. 102 WAL 2024, filed Aug. 6, 2024 (quoting *Podolak v. Tobyhanna Twp. Bd. of Supervisors*, 37 A.3d 1283, 1286-87 (Pa. Cmwlth. 2012) (citations omitted)).

resolution, rule, regulation, ordinance, report[,] or order."[8]  *Id*. § 703.

*Dusman v. Bd. of Dirs. of the Chambersburg Area Sch. Dist.*, 123 A.3d 354, 362-63 (Pa. Cmwlth. 2015).  "Section 703 of the Sunshine Act defines 'meeting' as '[a]ny prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action.'  65 Pa.C.S. § 703."  *Yannaccone v. Lewis Twp. Bd. of Supervisors*, 216 A.3d 551, 559 n.14 (Pa. Cmwlth. 2019).

Latker first contends that the trial court erred by holding that subsequent Borough Council action cured the PVFD Committee's Sunshine Act violations because the PVFD Committee is a deliberative body distinct from the Borough Council.  Latker argues that, at the preliminary objection stage of the proceedings, the trial court was required to accept all well-pled facts and all reasonable inferences therefrom as true.  According to Latker, by sustaining the POs, the trial court deprived Latker of the opportunity to prove that the PVFD Committee functioned as a distinct deliberative body (as he alleged in the Amended Complaint) and, thus, that the subsequent action of the Borough Council, a different body, did not cure the PVFD Committee's Sunshine Act violations.

This Court has explained:

Since the [Borough] is a political subdivision of the Commonwealth, its governing body (the [Borough Council]) and **committees thereof** . . . **are agencies governed by the Sunshine Act**.  The term "agency" is defined in Section 703 of the Sunshine Act as "[t]he body, and **all committees thereof authorized by the body to** take official action or **render advice on matters of agency business**, of all the following: . . . any board . . .

---

[8] "Notably, 'merely learning about the salient issues so as to reach an informed resolution at some later time does not in itself constitute deliberation.'  *Smith* . . . , . . . 82 A.3d [at] 416 . . . ."  *Yannaccone v. Lewis Twp. Bd. of Supervisors*, 216 A.3d 551, 560 n.14 (Pa. Cmwlth. 2019).

of any political subdivision of the Commonwealth . . . ."
65 Pa.C.S. § 703. "Political subdivision" is defined
therein to include "[a]ny . . . [Borough] . . . ." *Id*.

*Yannaccone*, 216 A.3d at 560 n.16 (emphasis added).

Latker alleged in the Amended Complaint that at the August 12, 2021 Borough Council meeting, Councilman Leahy made the first of several references to unpublished, unnoticed, and unauthorized meetings of what was later officially identified as the PVFD Committee. He further alleged that other references to unpublished meetings determining Borough policy on the PVFD were made at the October 14, and December 9, 2021 Borough Council meetings. *See* Amended Complaint at 7-9 (Original Record at 177-179).[9]

Latker further alleged:

[(]25) The Borough first acknowledged that the [PVFD] Committee was an official body on the agenda of the February 10, 2022 [meeting]. . . . The agenda was first made publicly available on February 9, 2022. At the February 10, 2022 Borough Council meeting, it was noted by Councilman Mielnik that the [PVFD] Committee had met again (also without notice) on February 1, 2022.

[(]26) It is believed and therefore averred that the February 1, 2022 meeting of the [PVFD] Committee, at which there was a quorum, and at which Borough agency business was discussed and deliberated, was unlawful under the Sunshine Act, and that any deliberations and decisions taken at that meeting are therefore invalid.

[(]27) The aforesaid meetings were unnoticed, unauthorized, unrecorded and closed to the public in violation of [Sections 704-706, 709-710 and 712 of the Sunshine Act,] 65 Pa.C.S.[] §§ 704[-]706, 709[-]710 and 712.

Amended Complaint at 9 (Original Record at 179) (footnote omitted).

---

[9] Because the pages of the trial court's Original Record are not numbered, the page numbers referenced herein reflect electronic pagination.

This Court has held:

> [a] "meeting" occurs, and thus must be open to the public, if the agency convenes it to deliberate agency business. *See* 65 Pa.C.S. §§ 703, 704. There is nothing in the [Sunshine] Act that expressly precludes private information gathering as a collective effort by members of an agency, including by a quorum. What the [Sunshine] Act does proscribe is private "deliberations." As noted, the [Sunshine] Act defines "deliberation" in terms of discussion of agency business - namely, the framing, preparation, or enactment of laws, policies, or regulations, or the creation of liability by contract or otherwise . . . - but only where the discussion is "held for the purpose of making a decision." 65 Pa.C.S. § 703.

*Smith*, 82 A.3d at 415.

> Making a decision implies the exercise of judgment to determine which of multiple options is preferred. *See generally Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 5 (1990) (expressing that "the term 'decision' implies a . . . choice or judgment between two positions"). Thus, a discussion of agency business may be said to have taken place "for the purpose of making a decision" - and therefore, to have comprised "deliberations" - where the discussion consisted of debate or discourse directed toward the exercise of such judgment. *Cf.* Random House Webster's College Dictionary 352 (2d ed. 2000) (defining "deliberation," in relevant part, as "careful consideration before decision"). This would occur, for example, where agency members weigh the "pros and cons" of the various options involved, or otherwise engage in comparisons of the different choices available to them as an aid in reaching a decision on the topic, *cf.* [Section 541.202(a) of the Fair Labor Standards Act,] 29 C.F.R. § 541.202(a) (providing that "the exercise of . . . judgment involves the comparison and the evaluation of possible courses of conduct"), even if the decision is ultimately reached at a later point.

> Gatherings held solely for the purpose of collecting information or educating agency members about an issue do not fit this description, notwithstanding that the information may later assist the members in taking official

7

action on the issue. To conclude that such information-gathering discussions are held for the purpose of making a decision would amount to a strained interpretation not reflective of legislative intent. In this regard, it bears noting that, although the [Sunshine] Act is designed to enhance the proper functioning of the democratic process by curtailing secrecy in public affairs, *see* [Section 702(a) of the Sunshine Act,] 65 Pa.C.S. § 702 (relating to legislative findings and declaration); *Babac v. Pa. Milk Mktg. Bd.*, . . . 613 A.2d 551, 553 ([Pa.] 1992), the legislative body has expressly cabined the openness directive by reference to a specific discussional purpose ("making a decision"), thereby leaving room for closed-door discussions held for other purposes. *See generally* [Section 1922(2) of the Statutory Construction Act of 1972,] 1 Pa.C.S. § 1922(2) (reflecting a presumption that the General Assembly intends the entire statute to be effective and certain).

*Smith*, 82 A.3d at 415-16.

Accepting Latker's averments as true, it appears that if proven, such allegations could establish that the PVFD Committee was an agency subject to the Sunshine Act as a Borough Council "committee[] . . . authorized . . . to take official action or render advice on matters of agency business[.]" 65 Pa.C.S. § 703. Further, such allegations, if proven, could establish that the PVFD Committee engaged in "prearranged gathering[s] . . . attended or participated in by a quorum of the members . . . held for the purpose of deliberating agency business or taking official action[,]" 65 Pa.C.S. § 703, which culminated in Councilman Mielnik's recommendation at the December 9, 2021 Borough Council meeting.

However, "short of fraud . . . , most any Sunshine Act infraction could [be] cured by subsequent ratification at a public meeting. Otherwise, governmental action in an area would be gridlocked with no possible way of being cured once a Sunshine Act violation was found to have occurred." *Lawrence Cnty. v. Brenner*, 582 A.2d 79, 84 (Pa. Cmwlth. 1990) (citation omitted). In *Mazur v. Washington County Redevelopment Authority*, 900 A.2d 1024 (Pa. Cmwlth. 2006),

8

> [the a]ppellees considered adopting a tax increment financing plan to pay project costs.
>
> Pursuant to Section 5(a) of the Tax Increment Financing [(TIF)] Act (TIF Act), [Act of July 11, 1990, P.L. 465, as amended, 53 P.S. § 6930.1-6930.13,] representatives from the three taxing bodies met with representatives of the [Washington County] Redevelopment Authority [(Redevelopment Authority)] to discuss proposals for the creation of a TIF district for the development. This group [(Study Committee)] met on three occasions between April and June 2005.
>
> In July 2005, the Redevelopment Authority presented its TIF proposal at a public meeting. During August and September 2005, the [t]ownship, [c]ounty and [s]chool [d]istrict each held public meetings to vote on the TIF proposal.

*Mazur*, 900 A.2d at 1025-26 (footnote omitted).

In *Mazur*, the appellants alleged that the Study Committee had violated the Sunshine Act by conducting closed committee meetings. The trial court granted the Redevelopment Authority's motion for judgment on the pleadings. Upon review, this Court affirmed, concluding that the Study Committee was not an agency under the Sunshine Act. This Court further opined:

> It is useful, however, to note the TIF Act requires various public meetings and votes. Section 5(a)(5) of the TIF Act, 53 P.S. § 6930.5(a)(5), requires the municipality creating the TIF district to hold a public meeting concerning the proposed plan for the district. The provision expressly requires that this meeting comply with the Sunshine Act. **This provision was satisfied here**: **the Redevelopment Authority presented the TIF proposal for public discussion and vote at its July 2005 meeting**.

*Id*. at 1029 (emphasis added). Thus, it is clear that even if the Study Committee had violated the Sunshine Act, the Redevelopment Authority's presentation of the Study Committee's proposal at its public meeting cured any purported violation. Similarly, here, because the Borough Council presented the PVFD Committee's proposal at the

9

December 9, 2021 public meeting, any purported Sunshine Act violation by the PVFD Committee was cured.

For all of the above reasons, the trial court's order is affirmed.[10]

_____

ANNE E. COVEY, Judge

---

[10] Given this Court's conclusion that the Borough Council's public vote cured any PVFD Committee Sunshine Act violations, this Court does not reach Latker's remaining issues.

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

Hollidaysburg Community Watchdog   :
and Richard Latker                  :
                                   :
        v.                     :
                                   :
Borough of Hollidaysburg and     :
Jim Gehret, Borough Manager    :
                                   :   No. 199 C.D. 2024
Appeal of:  Richard Latker     :

<u>O R D E R</u>

AND NOW, this 16th day of July, 2025, the Blair County Common Pleas Court's February 6, 2024 order (entered February 13, 2024) is affirmed.

_____
ANNE E. COVEY, Judge