82 A.3d 407

James M. SMITH, Appellant

v.

TOWNSHIP OF RICHMOND, Berks County, Pennsylvania, Gary J. Angstadt, Ronald L. Kurtz, and Donald H. Brumbach, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2013.

Decided Dec. 16, 2013.

David Weston Crossett, Esq., Smith Law Group, LLC, Fleetwood, for James Michael Smith.

James Michael Smith, Esq., Smith Law Group, LLC, Fleetwood, pro se appellant.

Melissa Bevan Melewsky, Esq., for Pennsylvania NewsMedia Association, amicus curiae.

Anthony Randall Sherr, Esq., Mayers, Mennies & Sherr, L.L.P., Blue Bell, for Twp of Richmond, Berks Cty PA, Angstadt–G, Kurtz–R, Brumbach–D.

Sean Ashley Fields, Esq., PA School Boards Association, Inc., for Pennsylvania School Boards Association, amicus curiae.

Scott T. Wyland, Esq., Salzmann Hughes, P.C., Harrisburg, for County Commissioners Association of Pennsylvania, et al., amicus curiae.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice SAYLOR.

This Sunshine Act dispute concerns whether meetings between an agency and outside entities, including those involved in ongoing litigation with that agency, entailed "delibera-

tions"—and thus, should have been open to the public—where the subject of the meetings was the same as that of the litigation, although the agency claims the meetings were held for information-gathering purposes only.

Appellee Richmond Township was engaged in litigation with the Lehigh Cement Company ("Lehigh Cement"), and the East Penn Valley Residents Group (the "Citizens Group") as intervenor, over the possible expansion of Lehigh Cement's limestone quarry into the Township. *See generally Lehigh Cement Co. v. Richmond Twp. Zoning Hearing Bd.*, 2010 WL 9516510 (Pa.Cmwlth. Feb. 25, 2010). At a March 8, 2010, public meeting of the Township's three-member Board of Supervisors (the "Board"), the Township's solicitor announced that a series of gatherings with interested parties would take place to obtain information about relevant matters, such as the nature of quarrying and the Citizens Group's environmental concerns.[1] He referred to these gatherings as "executive sessions" of the Board and noted that they would be closed to the public as permitted under the Sunshine Act.[2] Four such gatherings took place on March 9–12, 2010, with a quorum of the Board in attendance at each: two with representatives of adjacent municipalities that had experience dealing with quarries; one with the Citizens Group and its attorney; and one with Lehigh Cement and its attorneys.

1.  The parties informally refer to these closed-door gatherings as "meetings." We will use the term "gathering" to avoid confusion, as "meeting" has a specific, relevant definition under the governing statute. *See* 65 Pa.C.S. § 703 (defining "meeting" as "[a]ny prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action").

2.  Act of Oct. 15, 1998, P.L. 729, No. 93, § 1 (as amended 65 Pa.C.S. §§ 701–716) (the "Act" or the "Sunshine Act"). The 1998 statute is a codification, as amended, of the prior 1986 Sunshine Act, *see* Act of July 3, 1986, P.L. 388, No. 84, whose definitions and openness requirements were substantially similar to those of the present enactment. Under the 1974 version of the statute, known as the "Sunshine Law," *see* Act of July 19, 1974, P.L. 486, No. 175, only meetings where "formal action" was scheduled or taken needed to be open to the public. *See id.* § 2; *Judge v. Pocius*, 28 Pa.Cmwlth. 139, 142, 367 A.2d 788, 790 (1977) (quoting 65 P.S. § 265 (repealed)).

At the Board's April 5, 2010, public meeting, the solicitor stated that the previously-announced "executive sessions" had occurred as scheduled. He explained that the supervisors did not deliberate on, conduct, or make any decisions on, Township business at any of the four gatherings, and he indicated that their sole purpose was for the Supervisors to ask questions of the invited persons so as to obtain information regarding the impact of a quarry in the Township. Thereafter, the Board appointed Supervisor Kurtz as its representative to join the solicitor in settlement discussions with Lehigh Cement and report back to the Board. There is no contention that these settlement discussions violated the Sunshine Act.

On May 10, 2010, Lehigh Cement submitted a proposed settlement agreement—which was solely the work product of Lehigh Cement—to the Township solicitor 45 minutes before the start of the Board's regularly-scheduled monthly public meeting. At the meeting, the solicitor read the proposed agreement into the record. A spirited public debate ensued. In the early morning hours of May 11, 2010, at the conclusion of the public debate, Supervisor Kurtz moved to accept the settlement agreement, and his motion was seconded by Supervisor Brumbach. The third Board member, Supervisor Angstadt, voted against the motion. The motion carried by a 2–1 vote.

Meanwhile, on March 22, 2010, Appellant James M. Smith, a resident of the Township acting *pro se*, filed a complaint in county court, naming as defendants the Township and its Supervisors (collectively, the "Township Parties"), and challenging the validity of the four gatherings. Appellant alleged that, on each such occasion, a quorum of the Board discussed and deliberated Township business, and that they were closed to the public in violation of Section 704 of the Act, which requires that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public. . . ." 65 Pa.C.S. § 704.[3] Appellant request-

3. "Agency" is defined to include a township's governing board. *See* 65 Pa.C.S. § 703. Section 704's open-meeting mandate is subject to several exceptions. The only potentially relevant exception is for execu-

ed a declaratory judgment that the Board violated the Sunshine Act, a permanent injunction to force the Board to comply with the Sunshine Act in the future, and an order invalidating "all action taken during, or as a result of discussions held at [such] meeting[s]." Complaint at 4–5, *reproduced in* R.R. 7a–8a. In their answer, the Township Parties denied the allegations, asserting that the gatherings were held solely to obtain information, and did not involve any agency business, official action, or discussion among Supervisors. *See* Answer & New Matter at 5 & Exh. 1, *reproduced in* R.R. 14a, 18a.

Ensuing depositions established that the gatherings involving the neighboring townships were convened to learn how quarry operations affected those municipalities—*e.g.*, by generating traffic, dust, and noise—and to determine whether means exist to mitigate such impacts. The gathering with the Citizens Group was held so that the Supervisors could understand its environmental concerns involving issues such as water quality, blasting, and toxins being released into the environment. The group's spokesman testified that he understood the gathering to be a fact-finding mission, and that no vote was taken by the Supervisors. Depositions of individuals at the gathering with Lehigh Cement reflected that it was also fact-finding in nature. The Supervisors asked questions that arose from information learned in the prior three gatherings. Some of the issues raised by those questions were ultimately addressed in the settlement agreement drafted by Lehigh Cement.

In his deposition, Appellant stated that he had no knowledge concerning whether the Supervisors voted during any of the four gatherings, but he theorized that, before convening them, the Supervisors had decided to settle the litigation and had scheduled them to develop terms of a settlement that would be acceptable to both Lehigh Cement and the Citizens Group. *See* N.T., Dec. 29, 2010, at 35–38, *reproduced in* R.R.

tive sessions because, as noted, that is how the solicitor described the gatherings. For present purposes, that exception has been removed from consideration as discussed below. *See infra* note 4.

281a–284a. In this regard, Appellant termed the gathering with Lehigh Cement a "settlement conference," and testified that such characterization was based on information he had obtained during discovery. *See id.* at 36–37. As well, with regard to the gathering with the Citizens Group, Appellant testified to his belief that its purpose was to identify terms that would be included in a settlement agreement, and that this belief was grounded on information relayed to him by John Keiser, the head of the group. Appellant admitted, though, that he was unaware of any "official actions" that might have occurred that could have bound the Township to specific settlement terms. Appellant further conceded that the official vote to accept Lehigh Cement's proposed agreement took place at an open meeting after the public had had time to comment.

After discovery concluded, the parties filed cross-motions for summary judgment. The common pleas court granted the Township Parties' motion, denied Appellant's motion, and entered judgment in favor of the Township Parties.

The Commonwealth Court affirmed. *See Smith v. Twp. of Richmond,* 54 A.3d 404 (Pa.Cmwlth.2012). The court initially observed that, under Section 704 of the Sunshine Act, "meetings," as defined by the Act, must be open to the public. It noted that the enactment defines a meeting, in relevant part, as a gathering held to "deliberat[e] agency business or tak[e] official action." 65 Pa.C.S. § 703. Thus, since Appellant did not assert that the challenged private gatherings involved any official action, the court concluded that the central issue was whether they included "deliberations" about Township business.[4] In this regard, moreover, the court explained that the

4. The court determined that the discussions did not constitute "executive sessions" as the solicitor had claimed, and thus, they were not exempt from Section 704's open-meeting requirement on that basis. *See Smith,* 54 A.3d at 410 & n. 5; *see generally* 65 Pa.C.S. § 708 (enumerating the purposes for which executive sessions may be conducted). Although the Township Parties argue that such holding was in error, the issue is not within the scope of the questions we accepted for review. *See Smith v. Twp. of Richmond,* 620 Pa. 50, 65 A.3d 914 (2013) (per curiam). Accordingly, the Commonwealth Court's ruling in this

Act defines "deliberation" as "[t]he discussion of agency business held for the purpose of making a decision." *Id.*[5]

With this background, the court developed that Appellant argued that the Board did indeed deliberate at the gatherings because it obtained information which, in turn, guided its evaluation and vote on a settlement with Lehigh Cement, and that the purpose of the meetings was to "make a decision." As to the first contention, however, the court noted that, in prior cases, it had established that fact-finding need not take place in public, *see Sovich v. Shaughnessy*, 705 A.2d 942, 945–46 (Pa.Cmwlth.1998) (stating the Sunshine Act does not require agency members to inquire and learn about issues only at open meetings), and that public officials have an affirmative duty to be fully informed and, as such, may "study, investigate, discuss and argue problems and issues" outside the confines of public meetings. *Belle Vernon Area Concerned Citizens v. Bd. of Comm'rs of Rostraver Twp.*, 87 Pa.Cmwlth. 474, 481, 487 A.2d 490, 494 (1985) (internal quotation marks omitted). The court also referenced *Conners v. West Greene School District*, 131 Pa.Cmwlth. 95, 569 A.2d 978 (1989), which had expressed that "[t]here is a substantial difference between discussion and deliberation," and that agency members may informally discuss and debate proposals among themselves without violating the Act. *Id.* at 105, 569 A.2d at 983. Thus, the court rejected a broad interpretation of "deliberation" as subsuming all discussion of any topic related to future agency business. As for Appellant's assertion that the purpose of the discussions was to come to a decision, the court expressed that such assertion lacked record support. *See Smith*, 54 A.3d at 409–10 ("The testimony of all who participated showed that the Supervisors were collecting information to allow them to make an informed decision *at some later time*. They sought

respect remains undisturbed. *See generally Gilbert v. Korvette, Inc.*, 457 Pa. 602, 619 n. 35, 327 A.2d 94, 103 n. 35 (1974).

5. "Agency business," in turn, is defined as "[t]he framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action." 65 Pa. C.S. § 703.

this information in the event the opportunity to settle the case might develop in the future." (emphasis in original)).

Next, the court distinguished the two primary cases that Appellant relied on to support his position, namely *Trib Total Media, Inc. v. Highlands School District*, 3 A.3d 695 (Pa. Cmwlth.2010), *appeal denied*, 611 Pa. 648, 24 A.3d 865 (2011), and *Ackerman v. Upper Mt. Bethel Township*, 130 Pa.Cmwlth. 254, 567 A.2d 1116 (1989). In *Trib Total Media*, the court explained, the public officials affirmatively conceded that they engaged in deliberations at the private meeting at issue, whereas, here, the deposition testimony uniformly described the gatherings as only involving the collection of information. In *Ackerman*, an amendment to the township's zoning ordinance was pending at the time of the non-public meeting in question, and the meeting's discussion addressed the merits of that amendment, which was later adopted at an open meeting. Here, by contrast, there was no pending settlement or discrete proposal before the Board during its four discussions on March 9–12, 2010. *See Smith*, 54 A.3d at 411. In this regard, the court explained:

> The law does not require the press and public to be present at every agency meeting. The case law has drawn a line, however, around the meetings of public officials where a specific proposal or petition is discussed. Meetings at which such specific proposals or petitions are discussed may require the presence of the public. Here, there was no proposal available for discussion at any of the four meetings.

*Id.*

Finally, the court observed that Sunshine Act cases tend to be highly fact-sensitive, and that the plaintiff bears the burden of proving that deliberations took place at a private meeting. *See Kennedy v. Upper Milford Twp. Zoning Hearing Bd.*, 575 Pa. 105, 135, 834 A.2d 1104, 1123 (2003) (observing that plaintiffs alleging a Sunshine Act violation bear the burden of proof due to the presumption of regularity and legality attaching to local agency proceedings). The court ultimately concluded that, based on the record, Appellant had failed to carry his burden, and, as such, the common pleas court had appro-

priately granted summary judgment to the Township Parties. *See Smith,* 54 A.3d at 411–12.

We allowed appeal on a limited basis to examine whether the Sunshine Act's definition of "deliberations" is implicated where, as here, an agency meets with various parties—including opposing parties in litigation—to obtain information designed to help the agency make a more informed decision with regard to settling the ongoing litigation. *See Smith v. Twp. of Richmond,* 620 Pa. 50, 65 A.3d 914 (2013) (per curiam).

Appellant argues that the record supports his view that the four gatherings in question were held for the purpose of making a decision on Township business, since the information learned at these sessions assisted the Supervisors in voting on the settlement agreement that Lehigh Cement ultimately submitted, and the Supervisors knew at the time of the discussions that they would be helpful in this manner. *See* Brief for Appellant at 14–15. In this regard, Appellant proffers that an agency decision need not be made at the meeting itself for the meeting to be convened for the purpose of making a decision. Appellant contends that, to the extent the Commonwealth Court suggested (albeit in *dicta* ) that the only way to prove deliberations "may be" by admission of the attendees, *Smith,* 54 A.3d at 411, such a requirement is not found in the Act and, in any event, the Supervisors did admit to facts suggesting they deliberated. Finally, Appellant suggests that the Commonwealth Court erred to the extent it implied that the existence of a discrete proposal pending before the agency constitutes a prerequisite to a finding that deliberations occurred.

The Pennsylvania NewsMedia Association, as *amicus curiae,* adds that because the discussions pertained to ongoing litigation, they should be seen as having entailed deliberation of agency business, as they were held for the purpose of reaching a settlement relative to that litigation. The Association argues that the Commonwealth Court's holding creates too high a barrier to enforcing the Sunshine Act because it requires an admission of an impropriety by agency members.

The Township Parties respond that the record reflects that they convened the closed gatherings solely as collective fact-finding inquiries to educate themselves concerning: the problems that arise from quarry operations; the means that may be available to ameliorate such difficulties; the environmental concerns of the Citizens Group; and Lehigh Cement's responses to any questions that might arise during these informational background discussions. Referencing Commonwealth Court decisional law, the Township Parties emphasize that information gathering is not the same as deliberating, and that the Sunshine Act is not intended to cover exchanges designed simply to apprise agency members about salient issues. As a matter of policy, they additionally argue that requiring the initial "inquiry" stage of agency decision-making to be conducted in public can be counter-productive to the Act's purposes, and reference for support judicial expressions from other jurisdictions,[6] as well as scholarly commentary.[7]

---

**6.** *See FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 469, 104 S.Ct. 1936, 1940, 80 L.Ed.2d 480 (1984) (noting, under the federal Sunshine Act, that informal background discussions that clarify issues and expose varying views are a necessary part of an agency's work); *see also Arkansas Gazette Co. v. Pickens*, 258 Ark. 69, 522 S.W.2d 350 (1975). In *Pickens*, a concurring justice expressed that:

> [t]here is an appropriate investigative and exploratory stage preceding many actions by governmental bodies and agencies. At this stage, ... there are advantages to the public in permitting preliminary discussions in which there can be greater freedom of expression without fear of benefitting special interests, harming reputation, inviting pressure from special interests, creating a public image of ignorance ..., producing demagogic oratory, ... or "freezing" members into publicly expressed opinions they might well prefer to abandon. In such initial stages, it is well that much be done and said which is exploratory, experimental and hypothetical, and open meetings could prove to be an impediment to a free exchange of ideas of that sort.

*Id.* at 357 (Fogleman, J., concurring).

**7.** *See* Steven J. Mulroy, *Sunlight's Glare: How Overbroad Open Government Laws Chill Free Speech and Hamper Effective Democracy*, 78 Tenn. L. Rev. 309 (2011); Mark Fenster, *The Opacity of Transparency*, 91 Iowa L. Rev. 885, 908–10 (2006) (stating that anecdotal evidence suggests that over-inclusivity of openness rules results in "fewer meetings, constrained, less-informed dialogue, [and] domination by those who possess greater communications skills and self-confidence, no matter the quality of their ideas"); Nicholas Johnson, *Open Meetings and Closed Minds: Another Road to the Mountaintop*, 53 Drake L. Rev. 11, 22–27,

The Township Parties also reason that, even if this Court finds they acted improperly, any impropriety was cured by the public debate and discussion that occurred at the May 10th public meeting where the settlement proposal was officially approved. Finally, they state that Section 713—which only gives courts discretion to invalidate actions taken at meetings that violate the Act, *see* 65 Pa.C.S. § 713—would not authorize the invalidation of the final vote taken at the May 10th public meeting in any event, since that meeting was open to the public as required.[8]

The Pennsylvania School Boards Association, participating as *amicus curiae,* relates that school boards must sometimes obtain information in a confidential setting to help them reach acceptable decisions on sensitive topics such as bullying or other student-related issues, and that the ability to do this effectively would be impaired if informational gatherings were required to be open to the press and the public. Separately, a

44–45 (2004) (pointing out that local agency members are often volunteers who own businesses or hold jobs in the community, and that their inhibitions to speaking freely in meetings attended by the media and the community may extend to reasonable concerns about loss of customers, loss of a job, or social ostracism); David A. Barrett, Note, *Facilitating Government Decision Making: Distinguishing Between Meetings and Nonmeetings under the Federal Sunshine Act,* 66 Tex. L. Rev. 1195, 1213–16 & n.115 (1988) (advocating a narrow interpretation of "meeting" under the federal enactment to exclude the initial, collective-inquiry stage, and suggesting that a broad construction would ultimately result in agencies making decisions based on incomplete or distorted information).

8.  In *Ackerman,* the Commonwealth Court determined that, since Section 713 only authorizes the invalidation of official action taken at an unlawful meeting, it does not permit courts to invalidate votes taken at a public meeting held after a private meeting, even if the private meeting was improper. *See Ackerman,* 130 Pa.Cmwlth. at 262–63, 567 A.2d at 1120; 65 Pa.C.S. § 713 (stating, in relevant part, that "[s]hould the court determine that the meeting did not meet the requirements of this chapter, it may in its discretion find that any or all official action taken *at the meeting* shall be invalid" (emphasis added)). The court continued that the General Assembly has provided no remedy for this situation beyond summary criminal proceedings against the members involved. *See Ackerman,* 130 Pa.Cmwlth. at 262–63, 567 A.2d at 1120; *see also* 65 Pa.C.S. § 714 (making it a summary offense punishable by a fine and the costs of prosecution for an agency member to "participate[ ] in a meeting with the intent and purpose" of violating the Act). This issue is discussed briefly below at footnote 10.

group of organizations representing the interests of municipal governing boards has filed an *amicus* brief, expressing that requiring information gathering to be conducted pursuant to the statutory procedures for open meetings is not mandated by the Act, and to interpret it in this way would impose significant administrative costs and burdens on municipalities and local authorities in an era of scarce public funds.

A motion for summary judgment should only be granted if there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. An appellate court may reverse an order granting summary judgment where there is an error of law or an abuse of discretion. Because the question of whether a genuine issue of material fact exists is one of law, appellate review is *de novo.* In undertaking such review, the record is viewed in the light most favorable to the non-moving party, and all doubts as to whether a genuine issue exists are resolved against the moving party. *See Karoly v. Mancuso,* 619 Pa. 486, 496–98, 65 A.3d 301, 308–09 (2013).

A "meeting" occurs, and thus must be open to the public, if the agency convenes it to deliberate agency business. *See* 65 Pa.C.S. §§ 703, 704. There is nothing in the Act that expressly precludes private information gathering as a collective effort by members of an agency, including by a quorum. What the Act does proscribe is private "deliberations." As noted, the Act defines "deliberation" in terms of discussion of agency business—namely, the framing, preparation, or enactment of laws, policies, or regulations, or the creation of liability by contract or otherwise, *see supra* note 5—but only where the discussion is "held for the purpose of making a decision." 65 Pa.C.S. § 703.

The record supports the conclusion that the four closed gatherings were held with the goal of gaining information that could prove useful to the Township in negotiating the terms of a settlement with regard to the underlying litigation. *See, e.g.,* N.T., Oct. 18, 2010, at 92, *reproduced in* R.R. 80a (reflecting Appellant's question, "But the purpose of these four meetings was to gather information that would assist you in

negotiating the terms of a settlement agreement with Lehigh Cement. Is that correct?," to which Supervisor Kurtz answered, "If it got to that point, yes."). There is no disagreement that whether to settle that litigation, and on what terms to settle it, constituted agency business. As reflected in the parties' arguments, the present dispute focuses on whether the discussions in question constituted "deliberations," that is, whether they were held "for the purpose of making a decision" on that topic.

Making a decision implies the exercise of judgment to determine which of multiple options is preferred. *See generally Griffin & Dickson v. United States*, 21 Cl.Ct. 1, 5 (1990) (expressing that "the term 'decision' implies a . . . choice or judgment between two positions"). Thus, a discussion of agency business may be said to have taken place "for the purpose of making a decision"—and therefore, to have comprised "deliberations"—where the discussion consisted of debate or discourse directed toward the exercise of such judgment. *Cf.* RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 352 (2d ed. 2000) (defining "deliberation," in relevant part, as "careful consideration before decision"). This would occur, for example, where agency members weigh the "pros and cons" of the various options involved, or otherwise engage in comparisons of the different choices available to them as an aid in reaching a decision on the topic, *cf.* 29 C.F.R. § 541.202(a) (providing that "the exercise of . . . judgment involves the comparison and the evaluation of possible courses of conduct"), even if the decision is ultimately reached at a later point.

■ Gatherings held solely for the purpose of collecting information or educating agency members about an issue do not fit this description, notwithstanding that the information may later assist the members in taking official action on the issue. To conclude that such information-gathering discussions are held for the purpose of making a decision would amount to a strained interpretation not reflective of legislative intent. In this regard, it bears noting that, although the Act is designed to enhance the proper functioning of the democrat-

ic process by curtailing secrecy in public affairs, *see* 65 Pa.C.S. § 702 (relating to legislative findings and declaration); *Babac v. Pa. Milk Mktg. Bd.*, 531 Pa. 391, 395, 613 A.2d 551, 553 (1992), the legislative body has expressly cabined the openness directive by reference to a specific discussional purpose ("making a decision"), thereby leaving room for closed-door discussions held for other purposes. *See generally* 1 Pa.C.S. § 1922(2) (reflecting a presumption that the General Assembly intends the entire statute to be effective and certain).

■ We observe, moreover, that, while it is possible such closed-door sessions may have a practical benefit as suggested by the sources referenced by the Township Parties, *see supra* notes 6–7, when an agency holds such gatherings and invites parties to ongoing litigation, skepticism among the general public is not unreasonable, as suspicions may naturally arise that the conversations are aimed at deliberating agency business in private. In such cases, the agency incurs the risk that citizens will challenge the propriety of its actions, and consequently, that it will have to defend those actions in the context of legal proceedings where an evidentiary record is developed (as in this case) and a determination is made by a fact-finder concerning whether a violation occurred. However, since the Act does not forbid agencies from proceeding in this manner, it is not our function as a reviewing court to impose a bright-line preclusive rule to that effect. Rather, the question of whether any such discussions were required to be open to the public depends on the facts of each case. Additionally, in view of the "presumption of regularity and legality that obtains in connection with proceedings of local agencies," *Kennedy*, 575 Pa. at 135, 834 A.2d at 1123, the challenger bears the burden to prove a violation.

On this record, we agree with the Commonwealth Court that the Supervisors' four closed-door gatherings did not violate the Act because they were held for informational purposes only and did not involve deliberations. *See Smith*, 54 A.3d at 411 ("All the witnesses confirmed the description of the meetings as fact-finding in nature."). Appellant disagrees and emphasizes portions of the record that he claims provide

evidence of deliberations. For instance, he notes that one of the Supervisors affirmed that the Board held the gatherings to learn about quarry-related issues so that they could later make a more educated decision. *See* Brief for Appellant at 20. In this regard, Appellant views as "dispositive" an alleged admission by two of the Supervisors that the data learned at the closed-door gatherings was the only information they ultimately relied upon in deciding how to cast their vote. *See id.* at 9–10 & n.2, 20. Appellant also quotes an email message from the Township solicitor to the attorney for the Citizens Group expressing an intention on the part of the Supervisors to inform the group of the Supervisors' "position on the Lehigh Cement zoning issue." R.R. 764a.

As noted, however, merely learning about the salient issues so as to reach an informed resolution at some later time does not in itself constitute deliberation. Contrary to Appellant's suggestion, this conclusion does not depend on whether such information forms the sole basis of the agency member's subsequent vote. Further, although the email referenced by Appellant suggested an intention to inform the Citizens Group of the Board's position concerning the quarry litigation, this too does not imply that a discussion was held for the purposes of making a decision. *Cf. Griffin & Dickson,* 21 Cl.Ct. at 5 (explaining the difference between a "position" and a "decision").

■ With that said, there is one portion of the deposition transcripts that gives us pause. John Keiser, a member of the Citizens Group, testified that, at the closed gathering with his organization, two of the Supervisors expressed differing views as to whether it would be in the Township's interests to settle the quarry litigation. *See* N.T. Oct. 18, 2010, at 22, *reproduced in* R.R. 644a. Viewed favorably to Appellant, this testimony can be read to suggest that a brief exchange occurred concerning the benefits of settlement. Nevertheless, according to Mr. Keiser's description, this exchange appears to have been *de minimus* within the context of the meeting as a whole, which lasted more than an hour and a quarter and which Mr. Keiser described as being held, overall, for informa-

tion-gathering purposes. *See id.* at 19, *reproduced in* R.R. 641a ("The purpose of the meeting was to gain information about the concerns, the environmental concerns primarily, that our group had been expressing for the last three and a half years in front of the Zoning Board."). The common pleas court, as well, described the deposition as confirming an educational purpose for the meeting. *See Smith v. Twp. of Richmond,* No. 10–5583, *slip op.* at 2–3 (C.P. Berks Nov. 29, 2011). We do not believe that the isolated portion of Mr. Keiser's testimony referenced by Appellant, and excerpted from an incomplete transcript,[9] constitutes a sufficient basis to conclude that the common pleas court erred in this respect.[10]

The order of the Commonwealth Court is affirmed.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, McCAFFERY and STEVENS join the opinion.

---

9. Appellant has omitted from both the reproduced record and the certified record large portions of the Keiser transcript, including the section where the Township's attorney questioned the deponent. We find this problematic insofar as Appellant seeks to rely on that very transcript as alleged proof of a Sunshine Act violation. Absent the ability to review the missing portion of the deposition, we are left without any information concerning whether Mr. Keiser may have clarified, or "backtracked" from, his earlier answers.

10. Even if Appellant were able to adduce sufficient evidence to prove that the challenged closed-door gatherings entailed deliberations, the primary relief he requested would be unavailable: his complaint asks that the county court invalidate actions taken during, or as a result of, discussions held at the closed-door meetings. No official actions were taken at the closed-door gatherings, however, and it is the prevailing law of this Commonwealth that the Sunshine Act does not authorize courts to invalidate official action taken at a subsequent public meeting that conforms to the Act's requirements, based on an earlier, improper closed-door meeting. *See supra* note 8; *see also ACORN v. SEPTA,* 789 A.2d 811, 813 (Pa.Cmwlth.2002) ("[T]his [c]ourt has repeatedly held that official action taken at a later, open meeting cures a prior violation of the Sunshine Act."). The Township Parties raised this argument in their brief to the Commonwealth Court, and they repeat it presently. *See* Brief for Appellees at 42–44 & n.9. The Commonwealth Court did not address it, presumably because of its holding that the closed-door discussions did not violate the Sunshine Act in the first instance.