J-S25035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER FREEMAN | : | |
| | : | |
| Appellant | : | No. 1660 WDA 2017 |

Appeal from the PCRA Order October 18, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015155-2010

BEFORE: GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 29, 2018**

Christopher Freeman appeals *pro se* from the order entered October 18, 2017, dismissing his first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] On appeal, Freeman contends the PCRA court erred in dismissing his petition without first conducting an evidentiary hearing on his claims concerning trial counsel's ineffectiveness and the legality of his sentence. We affirm.

The facts underlying Freeman's arrest and conviction were summarized in the prior decision of this Court affirming Freeman's judgment of sentence on direct appeal:

> During the late evening on July 6, 2010, Freeman went over to the house of a friend, James Lyle, to hang out on the porch, play video games, and smoke marijuana. Lyle's home is located at 3124 Sacramento Avenue, Pittsburgh, Pennsylvania in the

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Sheraden section of the city. The victim, Ben Lewis, was neighbors with Lyle, and his house was located at 3126 Sacramento Avenue. He apparently approached the two men, mumbled something, and Freeman asked the victim to repeat what he had said. Lyle heard the victim say "you" and "nigger." Freeman became visibly upset and the victim retreated to his house. Freeman then left Lyle's home.

Several hours later, Lyle was in his dining room, at his computer, when he noticed motion-sensor lights go on at the victim's house. He heard three loud bangs and looked out the window. Lyle observed three men in dark clothing, including Freeman, standing outside the victim's home. Freeman, who had a shirt covering the lower half of his face,[3] told Lyle, "You didn't see anything." He then pulled a gun from his waistband, and pointed it at Lyle. Lyle closed his blinds and went back into his dining room. Lyle then heard the sound of both of the victim's vehicles, a red Chevy pickup truck and a blue Pontiac Sunbird, drive off.[4]

[3] Lyle testified he recognized Freeman based on his hair, height, eyes, voice, and because he had on the same clothes as earlier in the evening.

[4] Two other witnesses, Joyce Maust and Iesha Griffin, testified that they lived on the same street as the victim and Lyle, and they saw both of the victim's cars driving off down the street. Griffin also stated that she saw two people in the Pontiac and one person in the truck.

The next morning, Lyle went to the victim's home and saw that the front door had been damaged and the air conditioning unit was hanging out the window. He opened the door slightly and observed the victim on the ground. He called out the victim's name, heard no response, and went back to his house to call 911.

Detective Christine Williams of the City of Pittsburgh Police Department responded to the scene and found the victim dead, as a result of two gunshot wounds to the shoulder and chest. The victim also suffered from blunt force trauma to his scalp, at the top and back of his head. Detective Williams indicated the interior of the residence looked like it had been ransacked, with furniture overturned, the doorjamb pulled away from the frame of the door, and a large sliding window hanging out the window frame. Detective Williams also found three live bullet casings, and two

spent bullet casings in the same room. Police officers issued a "be on the lookout" report for the victim's two vehicles.

That same day, Detective John Lewis was taking part in an unrelated narcotics investigation near the entrance to Sheraden Park when he observed two men standing near to a red pickup truck talking to a third man, who was behind the wheel of a blue Pontiac. Detective Lewis identified Freeman and Christopher Hunter as the two men standing outside the truck and the driver of the Pontiac as Marshineak Manning. The detective saw Manning stop the car and talk to the two other men for a couple of minutes before driving off. Freeman was taken into custody as part of that unrelated investigation. He was searched incident to arrest and a set of keys was seized. The car and the truck were found and subsequently determined to be the victim's missing vehicles. The keys found on Freeman fit in the lock and ignition for the red truck.

When the officers investigating the victim's murder learned that Freeman had been arrested near the victim's truck, they asked to speak with him on July 8, 2010. He agreed to speak without a lawyer and signed a Police Interrogation Warning Form. During the interrogation, Freeman maintained he did not know the victim, nor was he familiar with the street where the victim lived. When asked about the truck, Freeman said he was never with a red truck and did not know anything about a red truck. He denied talking to anyone inside a blue Pontiac or ever being in Sheraden Park. The investigating detective, James McGee, then asked Freeman, "'Well, if you didn't have anything to do with the red pickup truck, why did you have the keys that belonged to the red pickup truck?'" Freeman said he had found those keys in Sheraden Park. When confronted with the fact that he had just said that he had never been in the park, Freeman responded, "Well, I mean over by the high school." After questioning, Freeman was not arrested for the murder.

Also during this time, Lyle did not tell the police about the events that transpired the night before because he was "scared." Shortly after the incident, Lyle said that a man approached him and threatened him not to tell police what he knew about the murder. The man also told Lyle that he had to send money to post Freeman's bond for his arrest on the other charges and to put money in Freeman's "book." Lyle paid the bond, but the threats and demands for money continued. In mid-October 2010, tired of the threats and demand for payments, Lyle went to the police, telling them what he knew about Freeman and the night in

question.  Lyle also identified Manning as the individual that threatened him and forced him to send money to Freeman.

Based on this evidence, Freeman was arrested for Lewis's murder on October 15, 2010.  Although Freeman verbally agreed to waive his **Miranda**[5] rights, he refused to sign the Police Interrogation Warning Form, stating he was not comfortable signing the form.  With respect to the night in question, Freeman again denied any knowledge of the victim, the street where the victim lived, Lyle, and even Manning.

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Freeman's first jury trial was held on March 6, 2011 to March 13, 2011, but ended in a mistrial.[6]  His second jury trial began on October 23, 2012. . . .

[6] The court determined a juror had conducted inappropriate internet research related to the case.  **See** N.T., 3/6/2011–3/13/2011, at 491–492.

Before cross-examination of Lyle began, the jury was removed.  Defense counsel sought permission to cross-exam[ine] Lyle about a 2008 conviction for aggravated assault and solicitation to commit assault, rape and murder. . . .

The [trial] court . . . concluded that pursuant to [Pa.R.E.] 609 Lyle's prior convictions were inadmissible[.]

**Commonwealth v. Freeman**, 125 A.3d 466 (unpublished memorandum) at 2-6, 22-23 (Pa. Super. 2015) (citations to the record omitted; some formatting).

At the beginning of the final jury charge, the trial court instructed the jury:  "You should consider these instructions as a whole.  You may not pick out one instruction and disregard the others."  N.T., 10/24/2012, at 310.  The trial court orally instructed the jury on fundamental legal principles, including explanations of the presumption of innocence, reasonable doubt, burden of proof, direct and circumstantial evidence, differences between expert and lay

- 4 -

witnesses' testimony, witness credibility incorporating voluntariness of statements and how to consider conflicts and discrepancies in testimony, and conspirator and accomplice liability. *See id.* at 310-325. The trial court then verbally instructed the jury on the elements of the offenses and any lesser included offenses. *See id.* at 326-342.[2]

According to the notes of testimony for the next day: "At approximately 12:43 p.m., a jury question was handled off the record"; and "At approximately 3:01 p.m., a [second] jury question was handled off the record." N.T., 10/25/2012, at 349. Pursuant to the representations of Freeman's trial counsel in a subsequent filing, the following events occurred:

> 3. . . . [T]he [trial c]ourt advised counsel for the parties that it had received a request from the jury for a written copy of the instructions received verbally from the [c]ourt the day before. The [c]ourt further advised counsel it intended to honor the request.
>
> 4.    Defense counsel presented his position that such action would be contrary to the Rules of Criminal Procedure and counsel for the Commonwealth agreed. The [trial c]ourt directed counsel to reach an agreement as to the proper response to the jury's request.
>
> 5.    Despite good faith efforts, counsel was unable to reach an agreement.
>
> 6.    The [trial c]ourt summoned counsel into chambers, heard the respective positions of the parties, then announced a portion of the verbal instructions . . . would be given to the jury and that the jury would not be given the additional cautionary instructions counsel had urged the Rules required.

_____

[2] Freeman did not present any defenses, and the trial court thus did not need to instruct on any.

7. All of the above pleaded activity occurred outside of the record.

8. The [trial c]ourt did not afford counsel for the defendant the opportunity to place his objections on the record.

Req. for Evidentiary Hr'g, 1/23/2013, at ¶¶ 3-8.[3]

On October 25, 2012, a jury found Freeman guilty of murder of the second degree, robbery of motor vehicle, burglary, and conspiracy to commit

_____

[3] The Commonwealth has neither confirmed nor challenged the veracity of Freeman's trial counsel's account. **See** Commonwealth's Resp. to Def.'s Post Sentence Mot., 3/12/2013; Commonwealth's Brief at 3-4, 22-28.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court stated that no "transcript of the supposed written instruction" exists and that it "is at a loss to really address the topic." Trial Court Opinion, 7/28/2014, at 3.

Freeman's post-sentence motion stated: "The written portion given to the jury is attached to this motion as 'Exhibit A.'" Post-Sentence Mot., 1/14/2013, at ¶ 2. However, this attachment is not a transcript of the oral instructions nor an exhibit entered into the certified record; its origin therefore remains unclear. Although we have no reason to doubt that it is an accurate representation of the written instructions given to the jury, we likewise do not understand why the trial court would then assert that there was no record of the written instructions.

We thus do not have an authoritative copy of the written instructions given to the jury. "Omissions like these significantly impair our ability to consider an appeal. They are a violation of our rules[.]" **Erie Ins. Exch. v. Moore**, 175 A.3d 999, 1006 (Pa. Super. 2017), *appeal granted on other grounds*, No. 87 WAL 2018 (Pa. July 10, 2018), *citing* **Smith v. Twp. of Richmond**, 82 A.3d 407, 417 n.9 (Pa. 2013) (lamenting similar issue in case before Supreme Court). "All involved in the appellate process have a duty to take steps necessary to assure that the appellate court has a complete record on appeal, so that the appellate court has the materials necessary to review the issues raised on appeal." Pa.R.A.P. 1921, Note.

burglary.[4]  On January 9, 2013, Freeman was sentenced to life imprisonment[5] and was ordered to pay "all applicable fees and costs[.]"  Order of Sentence, 1/9/2013.

"Freeman filed a post-sentence motion, challenging the jury instructions," *Freeman*, 125 A.3d 466 (unpublished memorandum) at 7, specifically contending that the trial court erred in providing "portions of the oral charge not permitted by Rule 646(B)" and by failing "to instruct the jury that the entire charge, written and oral were to be given equal weight and that the jury could submit questions regarding any portion of the charge as was required by Rule 646[(B)](2)."  Post-Sentence Mot., 1/14/2013, at ¶¶ 3, 5.  Trial counsel then filed a request for evidentiary hearing.  *See* Req. for Evidentiary Hr'g, 1/23/2013.  The Commonwealth filed a response to the post-sentence motion but did not address the averments in the request for evidentiary hearing.  No evidentiary hearing was granted, and the post-sentence motion was denied on April 23, 2013.

On May 23, 2013, Freeman filed a direct appeal.  In his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), Freeman challenged the trial court's denial of his post-sentence motion:

---

[4]  18 Pa.C.S.A. §§ 2502(b), 3720(a), 3502(c)(1), and 903, respectively.

[5]   Freeman was sentenced to life imprisonment for murder, five years of incarceration for robbery, and two years of incarceration for burglary, all to be served concurrently.  He received no further penalty for conspiracy.

I.    The trial court abused its discretion in denying Mr. Freeman's Post-Sentence Motion, which claimed the [c]ourt violated Pennsylvania Rule of Criminal Procedure 646 by allowing the jury to have a written portion of the jury charges.  During jury deliberations, the [c]ourt notified counsel that the jury requested a written copy of the jury instructions.  After a conference in chambers[1], the [c]ourt honored the request despite defense counsel's objection that the decision was contrary to what is allowable under Pa.R.Crim.P. 646(B).  Specifically, the written portion of the charges given to the jury contained more than "the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed."  Additionally, the [c]ourt violated Pa.R.Crim.P. 646[(B)](2) by failing to instruct the jury that the entire charge, written and oral, shall be given equal weight and that the jury could submit questions regarding any portion of the charge.  Thus, the [c]ourt abused its discretion in denying the post-sentence motion and Mr. Freeman should be granted a new trial.

   [1] During this in-chambers discussion, the [trial c]ourt did not afford defense counsel the opportunity to place his objections on the record.  Thus, defense counsel raised these objections on the record at the first opportunity:  in a Post-Sentence Motion.

II.    In the alternative, the trial court abused its discretion in denying trial counsel's request for an evidentiary hearing.  Such a hearing would have allowed defense counsel to develop, on the record, his objections to the [c]ourt permitting the jury to have a written portion of the jury charge as well as the [c]ourt's failure to instruct the jury in accordance with Pa.[R.]Crim.P. 646[(B)](2).  As the [c]ourt did not allow defense counsel the opportunity to preserve his objections on the record at the time the issue arose in chambers, an evidentiary hearing was necessary.

Rule 1925(b) Concise Statement of Errors Complained of on Appeal, 4/30/2014, at ¶ 23(I)-(II).  Freeman's concise statement also challenged the trial court's denial of his counsel's request to cross-examine Lyle about, inter alia, his prior conviction for solicitation.  *See id.* at ¶ 23(IV).  Nevertheless,

Freeman's claim regarding a violation of Pa.R.Crim.P. 646 was not advanced on direct appeal to this Court.

This Court affirmed the judgment of sentence on July 30, 2015. Freeman did not petition the Supreme Court of Pennsylvania for allowance of appeal.

On December 4, 2015, Freeman timely filed a *pro se* PCRA petition. Counsel appointed for Freeman filed an amended petition on July 8, 2016. On January 18, 2017, after a **Grazier** hearing,[6] the PCRA court granted Freeman's request to represent himself and ordered a second amended PCRA petition to be filed by March 23, 2017. Freeman filed his *pro se* second amended PCRA petition on March 14, 2017.[7] That petition propounded that trial counsel was ineffective for failing to cross-examine Lyle with regard to his prior criminal solicitation conviction and failing to object in a timely manner to the use of written jury instructions or to request that the trial court instruct the jury in the proper use of jury instructions. **See** Am. Pet. for Post-Conviction Relief, 3/14/2017, at 5, 18. The petition also averred that

---

[6] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[7] The certificate of service accompanying Freeman's second amended PCRA petition was dated March 14, 2017. The second amended PCRA petition was received and filed by the Allegheny County Department of Court Records on April 10, 2017. Pursuant to the "prisoner mailbox rule," we will consider Freeman's current PCRA petition filed as of March 14, 2017. **Commonwealth v. Whitehawk**, 146 A.3d 266, 268 n.3 (Pa. Super. 2016) ("under the 'prisoner mailbox rule' a document is deemed filed when placed in the hands of prison authorities for mailing").

Freeman's life sentence was illegal, because "it lacked statutory authorization, thereby violating the petitioner's due process rights." *Id.* at 22.

On June 12, 2017, Freeman filed another *pro se* amended PCRA petition adding a fourth claim that trial counsel was ineffective for preventing Freeman from testifying in his own defense. *See* Am. Pet. for Post-Conviction Relief Req. for Additional Issue, 6/12/2017, at 2.

On July 11, 2017, the PCRA court entered notice of its intent to dismiss Freeman's PCRA petition pursuant to Pa.R.Crim.P. 907. On October 18, 2017, Freeman's PCRA petition was dismissed by the PCRA court. This appeal followed.[8]

Freeman now raises the following issues for our review:

I.    Whether the PCRA court abused its discretion by summarily dismissing the petition without an evidentiary hearing to determine whether trial counsel was ineffective for giving unreasonable advice resulting in [Freeman] waiving his right to testify?

[II.]  Whether the PCRA court abused its discretion for failing to grant an evidentiary hearing to determine whether the trial court lawfully imposed an order authorizing the collection [of] costs of prosecution?

[III.] Whether the PCRA court abused its discretion for failing to grant an evidentiary hearing to determine whether trial counsel[ was] ineffective for failing to adequately address the court and request that he be allowed to introduce the prosecutor['s] sole witness James Lyle's prior convictions of criminal solicitation to

---

[8] On November 14, 2017, the PCRA court ordered Freeman to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Freeman complied on November 16, 2017. The PCRA court issued a responsive opinion on December 7, 2017.

rape and murder his own mother to prove biasness and motive of the witness testimony?

[IV.] Whether the PCRA court abused its discretion for failing to grant an evidentiary hearing to determine whether trial counsel was ineffective for failing to "timely" lodge an objection, or request to the trial court to instruct the jurors on the use of written instructions prior to them receiving these instructions as required by Pa.R.Crim.P. 646(B)?

[V.] Whether the PCRA court's dismissal resulted in committing a prejudicial error for failing to determine whether the trial court lacked statutory authorization when it imposed an illegal sentence of life without parole upon [Freeman] pursuant to 18 Pa.C.S.A. [§] 2502(b)?

Freeman's Brief at 4 (issues re-ordered to facilitate disposition).

In reviewing an appeal from the denial of PCRA relief, "this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Andrews*, 158 A.3d 1260, 1263 (Pa. Super. 2017) (citation omitted).

Freeman's first issue raised on appeal, alleging that his trial counsel was ineffective for giving him "unreasonable advice" that averted him from testifying on his own behalf, Freeman's Brief at 26, was not included in his *pro se* second amended PCRA petition of March 14, 2017. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Although, in June 2017, without seeking the PCRA court's leave, Freeman filed a third amended PCRA petition that included this first issue about waiver of his right to testify on his own behalf, Am. Pet. for Post-Conviction Relief Req. for Additional Issue, 6/12/2017, at 2, we cannot consider any arguments raised therein, because Freeman did not receive –

- 11 -

nor even seek – the PCRA court's permission to file a third amended petition.[9]

A PCRA petitioner may not raise new claims by merely supplementing a pending PCRA petition without court authorization; failure to obtain leave of the PCRA court waives such claims. *See Commonwealth v. Mason*, 130 A.3d 601, 627 (Pa. 2015). Thus, Freeman's third amended PCRA petition failed to preserve his argument as to his trial counsel's ineffectiveness for advising him not to testify. Accordingly, Freeman's first challenge raised on appeal is waived.

His second issue, challenging the order requiring him to pay the costs of prosecution, *id.* at 61, was not raised in his second or third amended PCRA petitions of March 2017 and June 2017, respectively. Therefore, Freeman has also failed to preserve this argument by not including it in the amended PCRA petition ordered by the PCRA court.[10] *See* Pa.R.A.P. 302(a).

_____

[9] Freeman's third amended PCRA petition was also filed after the due date ordered by the PCRA court for him to file a *pro se* amended PCRA petition. Order, 1/18/2017.

Furthermore, even if we consider Freeman's filing on June 12, 2017, to be a request to add another issue to his amended PCRA petition and not as another amended PCRA petition itself, his request was still never granted by the PCRA court, and this failure to obtain leave of the PCRA court waives this additional claim. *See Mason*, 130 A.3d at 627.

[10] Even though payment of the costs of prosecution was part of Freeman's sentence and challenges to the legality of a sentence can be raised at any time, such claims must still be included in a PCRA petition in order to be preserved. *Commonwealth v. Ousley*, 21 A.3d 1238, 1245 (Pa. Super. 2011) (claim that counsel was ineffective for failing to present legality of sentencing claim was presented for the first time on appeal and therefore had

Freeman's next two claims contend that his trial counsel was ineffective. *See* Freeman's Brief at 34-36, 41-48. With regard to PCRA claims alleging ineffective assistance of counsel, this Court has held:

> Counsel is presumed to have been effective. To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Andrews*, 158 A.3d at 1263 (quotation marks and citation omitted). "A failure to satisfy any of the three prongs of [this] test requires rejection of a claim of ineffective assistance of trial counsel[.]" *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011).

Furthermore, "[a]n evidentiary hearing is not mandatory for all claims raised in a PCRA petition." *Commonwealth v. Clark*, 961 A.2d 80, 94 (Pa. 2008). "Counsel will not be deemed ineffective for failing to raise a meritless claim. By extension, the PCRA court did not err in denying the claim without a hearing." *Commonwealth v. Sneed*, 45 A.3d 1096, 1115 (Pa. 2012) (internal citation omitted).

Freeman argues that the PCRA court abused its discretion by not granting an evidentiary hearing to determine whether trial counsel was ineffective for "failing to adequately address" the trial court about using Lyle's

---

been waived), *citing* **Commonwealth v. Pitts**, 981 A.2d 875, 880 n.4 (Pa. 2009).

prior conviction for solicitation during counsel's cross-examination of Lyle. Freeman's Brief at 34. The record demonstrates that trial counsel did seek permission from the trial court to cross-examine Lyle about this conviction, but the trial court denied the request. *See Freeman*, 125 A.3d 466 (unpublished memorandum) at 22-23. Additionally, Freeman challenged the court's denial of this request on direct appeal, and this Court found his arguments to be meritless and affirmed the decision of the trial court. Consequently, trial counsel cannot be deemed ineffective, and the PCRA court did not err in denying a hearing on a claim that has already been deemed meritless. *See Sneed*, 45 A.3d at 1115.

As for Freeman's proposal that trial counsel should have argued that evidence of Lyle's prior conviction should have been introduced "for purposes of establishing a motive, rather than for pursuing to introduce prior convictions for no apparent reason," Freeman's Brief at 36, Freeman never articulates what that alleged motive was. He merely baldly asserts that "Lyle had an[] ulterior motive for implicating [Freeman] in [Lewis's] death." *Id.* at 41. This undeveloped accusation cannot establish a meritorious claim, trial counsel cannot be considered ineffective for failing to raise it, and, again, the PCRA court did not err in refusing to hold an evidentiary hearing on this issue. *See Andrews*, 158 A.3d at 1263; *Sneed*, 45 A.3d at 1115.

Freeman's next contention is that trial counsel was ineffective for "failing to 'timely' lodge an objection, or request to the trial court to instruct the jurors

- 14 -

on the use of written instructions prior to them receiving these instructions as required by Pa.R.Crim.[P.] 646(B)[.]" Freeman's Brief at 42. He continues:

> More[o]ver, the PCRA [c]ourt and Commonwealth erroneously concluded that such issue was meritless and underserving of an evidentiary hearing. . . . However, [Freeman] intends to prove and address three significant factors within this argument[:] (1) The fact that the trial court violated Rule 646(B)[, which] was untimely contested by trial counsel which resulted in his ineffectiveness;[ (2) ]That the PCRA [c]ourt's conclusion insinuating that Rule 646(B) . . . was[ not] violated is completely erroneous and uncorrob[o]rated by the record[;] and[ ](3) That such issue is deserving of an evidentiary hearing to make a determination as to why trial counsel . . . failed to st[r]ategically lodge a timely objection to challenge the trial court's violation of Rule 646(B) and to determine whether such lack of action resulted in . . . prejudice[e] to the appellant. . . .
>
> [I]nstead of providing the jurors with the Judge's oral charge in "...its entirety[]" as required that consisted of 31 pages of instructions[, N.T., 10/24/2012, at] 310-342[,] the trial court dec[ei]tfully excluded 15 pages of the Judge's oral instructions[. *Id.* at] 310-325[.]
> . . .
>
> [T]he trial court failed to "...instruct the jury about the use of written charge . . . that the entire charge, written and oral, shall be given equal weight..."

*Id.* at 42-45.

> Pa.R.Crim.P. 646(B) states:
>
> The trial judge may permit the members of the jury to have for use during deliberations written copies of the **portion** of the judge's charge **on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed**.
>
> > (1) If the judge permits the jury to have written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed, the judge shall provide **that portion** of the charge in its entirety.

(2) The judge shall instruct the jury about the use of the written charge.  At a minimum, the judge shall instruct the jurors that

(a) the entire charge, written and oral, shall be given equal weight; and

(b) the jury may submit questions regarding any portion of the charge.

Pa.R.Crim.P. 646(B) (emphasis added).

Contrary to Freeman's assertion, Pa.R.Crim.P. 646(B) does not require that, if any written instructions are given to the jury, the entirety of the oral instructions be given to the jury in written form.  Instead, it mandates that, if any written instructions are distributed to the jury, the written instructions must include the elements of the offenses in their entirety, any lesser included offenses in their entirety, and any instructed defenses in their entirety.

Here, Freeman insists that the jury should have been given written instructions equal to the entirety of the oral jury charge, as reproduced on pages 310 to 342 of the notes of testimony from his jury trial.  Freeman's Brief at 45 (citing N.T., 10/24/2012, at 310-342).  He argues that the written instructions given to the jury instead only covered the content from the oral jury instructions that was transcribed on pages 326 to 342 of the notes of testimony.  *Id.* (citing N.T., 10/24/2012, at 310-342, excluding 310-325).[11]  Nonetheless, pages 326 to 342 contain all of the materials required by

---

[11]  All of the content of Exhibit "A" to the post-sentence motion is also contained within pages 326 to 342 of the jury trial notes of testimony. **Compare** Post-Sentence Mot., 1/14/2013, **with** N.T., 10/24/2012, at 326-342.

- 16 -

Pa.R.Crim.P. 646(B) – *i.e.*, the elements of the offenses and the lesser included offenses, as Freeman did not raise any defenses. *See* N.T., 10/24/2012, at 326-342. Accordingly, the content of the written jury instructions adhered to the requirements of Pa.R.Crim.P. 646(B), and Freeman's first challenge to the written instructions is meritless. Consequently, trial counsel cannot be found ineffective for failing immediately to raise this meritless claim on the record, and the PCRA court did not err in denying an evidentiary hearing on this claim. *Sneed*, 45 A.3d at 1115.

Freeman also challenges the trial court's failure to instruct the jury that written and oral instructions must be given equal weight. Freeman's Brief at 45. The Commonwealth proposes that the following instruction was "very similar to the instruction to which [Freeman] claims he was entitled under Rule 646(B)(2)(a)," Commonwealth's Brief at 28: "You should consider these instructions as a whole. You may not pick out one instruction and disregard the others." N.T., 10/24/2012, at 310. The Commonwealth continues that, based upon this instruction, the jury should have treated the oral and written instructions equally, as "the jury is presumed to follow the trial court's instructions." Commonwealth's Brief at 28, *citing* **Commonwealth v. Cash**, 137 A.3d 1262, 1280 (Pa. 2016).

However, this instruction was given at the commencement of the charge during the previous day, before written instructions were even contemplated. N.T., 10/24/2012, at 310. At no point did the trial court unambiguously "instruct the jurors that the entire charge, written and oral, shall be given

- 17 -

equal weight[,]" as required by Pa.R.Crim.P. 646(B)(2)(a).[12]  Freeman is correct that, prior to providing written instructions to the jury, the trial court should have instructed the jury pursuant to Pa.R.Crim. 646(B)(2)(a) but failed to do so, and his trial counsel should have been permitted to place an objection to this impropriety on the record immediately.  ***See*** Freeman's Brief at 42, 45.

However, after raising this claim in a post-sentence motion and Rule 1925(b) concise statement, counsel abandoned this issue in the appellate brief before this Court on direct appeal.  Freeman does not challenge trial counsel's decision not to pursue this issue on direct appeal.  ***See*** Freeman's Brief at 42-53.  Accordingly, it is waived.  ***See*** 42 Pa.C.S. § 9543(a)(3) (to be eligible for PCRA relief a petition must plead and prove "[t]hat the allegation of error has not been … waived").

Even if Freeman's underlying legal claim pursuant to Pa.R.Crim.P. 646(B)(2)(a) is of arguable merit, he still fails to establish how trial counsel's failure to object to the lack of a Pa.R.Crim.P. 646(B)(2)(a) instruction on the record in a timely manner prejudiced the outcome of his trial.  ***See Andrews***, 158 A.3d at 1263.  In his brief to this Court, Freeman relies upon an unpublished memorandum decision, ***Commonwealth v. Hernandez***, 175 A.3d 1104 (Pa. Super. 2017) (unpublished memorandum), to support his

---

[12]  Freeman does not raise any issues pursuant to Pa.R.Crim.P. 646(B)(2)(b), ***see*** Freeman's Brief at 42-53, although, based upon our review of the notes of testimony, there is no place in the record where the trial court instructed the jury that it "may submit questions regarding any portion of the charge[,]" including prior to giving the written instructions to the jury.  ***See*** N.T., 10/24/2012, at 310-347; N.T., 10/25/2012, at 349.

allegation of prejudice. Freeman's Brief at 47-48. Pursuant to this Court's internal operating procedure 65.37(A):

> An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding.

As none of the exceptions apply to Freeman, he should not have relied upon *Hernandez*, and we shall not consider it.

Assuming *arguendo* that we could rely upon *Hernandez*, that case concerned a trial court's failure to include the "defense[s] upon which the jury has been instructed" with written instructions, as required by Pa.R.Crim.P. 646(B)(1), which is not the allegation in the current appeal. *Compare Hernandez*, 175 A.3d 1104 (unpublished memorandum) at 3, 5, 7-8 *with* Freeman's Brief at 42-45.

Accordingly, Freeman has failed to establish that "there was a reasonable probability of a different outcome" if trial counsel had immediately objected to the trial court's failure to instruct the jury on the written jury instructions pursuant to Pa.R.Crim.P. 646(B)(2)(a), and, thus, he has not proven prejudice. *Andrews*, 158 A.3d at 1263. By failing to establish any one prong of the ineffective assistance of counsel test, Freeman's entire claim that trial counsel was ineffective for not immediately objecting to the trial

court's failure to instruct the jury on the written jury instructions fails. ***See Chmiel***, 30 A.3d at 1128.

Finally, Freeman argues that his sentence is illegal, because there is no statutory authority for imposing a life sentence for murder of the second degree. Freeman's Brief at 53. However, 18 Pa.C.S.A. § 1102(b) states: "a person who has been convicted of murder of the second degree . . . shall be sentenced to a term of life imprisonment." Consequently, statutory authority exists for Freeman's life sentence, and this claim is meritless.

Hence, all of the challenges raised by Freeman on appeal merit no relief. We thereby affirm the order of the PCRA court.

Order affirmed

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2018